IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| TODD KOLSTAD,<br><br>              Plaintiff,<br><br>vs.<br><br><br>CYNDI BAILLARGEON and<br>CRYSTAL WHITMORE,<br><br>              Defendants. | CV 24-85-GF-SPW<br><br><br><br><br>ORDER ON MAGISTRATE'S<br>FINDINGS AND<br>RECOMMENDATIONS |

Before the Court is United States Magistrate Judge Timothy Cavan's Findings and Recommendations, filed February 3, 2025. (Doc. 18). Judge Cavan recommends this Court deny Defendants' Motion to Dismiss. (*Id.* at 31).

Defendants timely filed an objection disagreeing with Judge Cavan's application of the collateral estoppel doctrine. (Doc. 19). Plaintiff timely filed a response rebutting Defendants' argument. (Doc. 20).

I.  **Background**

The parties do not object to Judge Cavan's statement of the facts of the case. As a result, the Court adopts the facts set out by Judge Cavan and restates the pertinent facts here.

1

On August 18, 2023, Kolstad and his wife, Krista Cummins-Kolstad, brought Kolstad's 14-year-old child, H.K., to a hospital in Glasgow, Montana, after H.K. claimed to have ingested poison. While at the hospital, H.K., reported an intention to attempt suicide if discharged and sent home. This was because H.K. identified as a male, while Kolstad and Cummins-Kolstad considered transgenderism to be a sin according to their religious beliefs. (Doc. 1 at 2). Kolstad and Cummins-Kolstad agreed to have H.K. referred to Billings Clinic Psychiatric Center in Billings, Montana. (*Id.*).

On August 22, Billings Clinic notified the hospital in Glasgow that a bed would likely be available for H.K. in Billings the following day. Later in the day on August 22, however, a physician at the Glasgow hospital informed Kolstad and Cummins-Kolstad that a psychiatric facility in Wyoming had a bed available immediately. (*Id.* at 3). Kolstad and Cummins-Kolstad refused to consent to the plan because they believed Wyoming allowed minors to obtain gender-affirming care without parental consent. (*Id.* at 2–3).

Approximately 15 minutes later, Defendant Baillargeon, a child protection specialist with the Child and Family Services Division ("CFSD"), arrived at Kolstad and Cummins-Kolstad's home accompanied by a police officer, and informed them that CFSD had taken custody of H.K. and would transport H.K. to the psychiatric facility in Wyoming without Kolstad and Cummins-Kolstad's consent. (*Id.* at 15).

Three days later, Baillargeon submitted an affidavit in Montana state court in support of a petition for emergency protective services. The affidavit stated that H.K. faced an "imminent risk of physical harm" when CFSD took H.K. into its custody. (*Id.* at 4, 16–17). In an ex-parte Order Granting Emergency Protective Services issued on August 25, 2023, the state court determined based on Baillargeon's affidavit and petition that (1) there was probable cause that H.K. was—or was in danger of being—subjected to physical neglect; (2) there was probable cause that "immediate protection of the child [was] required"; and (3) there was an "emergent need for placement" outside of the home, such that "no other efforts could have been made to make it possible for the child to safely remain in the child's home." (Doc. 1-9 at 2). In its order, the court set a show cause hearing where the "[p]arents will be given the opportunity to admit or deny the allegations contained in the petition and to provide testimony." (*Id.* at 7).

At the show-cause hearing on December 4, 2023, Kolstad and Cummins-Kolstad informed the court that their only remaining objection was to H.K.'s then-placement at a group home in Billings, forgoing their opportunity to challenge the court's prior findings. (Docs. 1-11 at 2; 6-1 at 7. *See also* Doc. 1-9 at 7). Accordingly, on December 19, the court issued an order adjudicating H.K. as a Youth in Need of Care, finding that Kolstad and Cummins-Kolstad "physically neglected the child," by "exposing or allowing the child to be exposed to an unreasonable

3

physical risk to the child" when they "refused to sign paperwork for [H.K.] to receive the care that was recommended by medical professionals" despite the fact that "[H.K.] was suicidal and needed acute psychiatric care." (Doc. 1-11 at 4.)

On February 4, 2024, CFSD placed H.K. with Kolstad's ex-wife and H.K.'s biological mother, Christine Kraemer, in Canada. (Doc. 1 at 23). On February 16, with H.K. now placed with the noncustodial parent and apparently safe, CFSD filed a motion to dismiss the petition and provide no further services to the family. (Doc. 11-1). On February 20, the state court granted CFSD's motion, ordering that H.K. remain in Kraemer's care, and dismissing the case. (Doc. 6-1). At the time of the filing of Kolstad's Complaint, H.K. remained in Kraemer's care. (Doc. 1 at 6).

Kolstad ("Plaintiff") plead two causes of actions under 42 U.S.C. § 1983 in the current matter: "Violation of Plaintiff Kolstad's Fourteenth Amendment Right to Care, Custody, and Control of His Daughter" (Count I) and "Violation of Plaintiff Kolstad's Fourteenth Amendment Right to Child Removal Proceedings Free from Judicial Deception" (Count II). (Doc. 1 at 24, 27).

On July 8, 2024, Cyndi Baillargeon and Crystal Whitmore ("Defendants") filed a Motion to Dismiss for failure to state a claim. (Doc. 5). The Defendants asserted that Kolstad's claims are barred by collateral estoppel because in the underlying state court proceedings it was ultimately determined that H.K. was subjected to an "unreasonable physical risk" when the Plaintiff "refused to sign

paperwork for [H.K.] to receive the care that was recommended by medical professionals." (Doc. 6 at 7–8, 20). Judge Cavan denied the Motion in his Findings and Recommendations. (Doc. 18).

## II.  Legal Standard

### A.  Findings and Recommendations

The parties are entitled to a de novo review of those findings to which they have "properly objected." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). The portions of the findings and recommendations not properly objected to will be reviewed for clear error. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *McMillan v. United States*, 112 F.3d 1040, 1044 (9th Cir. 1997) (citation omitted).

An objection is proper if it "identif[ies] the parts of the magistrate's disposition that the party finds objectionable and present[s] legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Mont. Shooting Sports Ass'n v. Holder*, CV 09-147-M, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). "It is not sufficient for the objecting party to merely restate arguments made before the magistrate or to incorporate those arguments by reference." *Id.* Objections are not "a vehicle for the

losing party to relitigate its case." *Hagberg v. Astrue*, CV-09-01-BLG, 2009 WL 3386595, at *1 (D. Mont. Oct. 14, 2009) (citation omitted).

    B.    *Motion to Dismiss for Failure to State a Claim*

Federal Rule of Civil Procedure 12(b)(6) governs a motion to dismiss for failure to state a claim. "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Bare legal conclusions or recitations of the elements are not enough. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## III. Discussion

Defendants object to Judge Cavan's determination that the Plaintiff's claims are not barred by collateral estoppel. (Doc. 19 at 5). Specifically, Defendants object to the finding that the state court proceeding did not include a final judgment on the merits. (*Id.*). The Court finds that Defendants properly objected to Judge Cavan's Findings and Recommendations and will conduct a de novo review of the objection.

*Res judicata* and collateral estoppel are doctrines that embody a judicial policy that favors a definite end to litigation. *Kullick v. Skyline Homeowners Ass'n, Inc.*, 69 P.3d, 225, 229 (Mont. 2003). Collateral estoppel, or issue preclusion, bars the reopening of an issue that has been litigated and determined in a prior action. *Holtman v. 4–G's Plumbing and Heating*, 872 P.2d 318 (Mont. 1994). To protect parties due process rights, courts consider whether the party against whom preclusion is asserted was afforded the opportunity to obtain "a full and fair adjudication of the issue in the initial action." *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1274 (Mont. 2006). "It is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion." *Id.* (quoting *Christo v. Padgett*, 223 F.3d 1324, 1329 (11th Cir. 2000), cert denied 531 U.S. 1191 (2001). Collateral estoppel has four elements: (1) the identical issue raised was previously decided in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; (3) the party against whom the plea is now asserted was a party

or in privity with a party to the prior adjudication; and (4) the party against whom preclusion is now asserted was afforded a full and fair opportunity to litigate the issue. *McDaniel v. State*, 208 P.3d 817, 826 (Mont. 2009).

In the Defendants' Motion to Dismiss, they argued that collateral estoppel required the dismissal of the matter under Rule 12(b)(6). (Doc. 6 at 21). Judge Cavan determined that all the elements of collateral estoppel were met except the second element, a final adjudication on the merits. (Doc. 18 at 19). Because the prior adjudication was dismissed via a motion filed by the plaintiff, Judge Cavan determined it was a voluntary dismissal under Rule 41(a)(2) of the Montana Rules of Civil Procedure. (*Id.* at 18). Under Rule 41(a)(2), a voluntary dismissal is without prejudice unless the order specifies otherwise. Judge Cavan concluded that because the Order to Dismiss ("Order") did not specify that it was with prejudice, "it must be treated as a dismissal without prejudice." (*Id.* at 19). And under Montana law a dismissal without prejudice does not qualify as a final judgment on the merits. (*Id.*).

Defendants object to Judge Cavan's finding that the Order to Dismiss was not sufficiently final for purposes of collateral estoppel. (Doc. 19 at 6). Defendants take issue with the finding that the Order was a dismissal without prejudice. (*Id.*). Defendants argue that the judgment and dismissal were made pursuant to Mont. Code Ann. § 41-3-438(3)(d), not Rule 41(a)(2), and that an order under § 41-3-438(3)(d) is a final judgment under Montana law. (Doc. 19 at 11). Alternatively,

Defendants contend that under the Montana Finality Factors the Order was a final judgment on the merits. (*Id.* at 15).

In response, the Plaintiff argues that the Order was a voluntary dismissal without prejudice and, therefore, was not a final adjudication on the merits. (Doc. 20 at 9). Alternatively, Plaintiff contends that even if the Order constitutes a final judgment on the merits, collateral estoppel should not apply because the issues in the case were not actually litigated; instead, the parties stipulated to the material facts during the December 4, 2023, show cause hearing. (*Id.* at 9–10).

This Court will first determine whether the Order was a final adjudication on the merits. If it is determined that the Order was a final adjudication on the merits, the Court will then address whether the party's stipulations mean the issues were not actually litigated.

    A.    *Whether the Order Was a Final Adjudication on the Merits*

Under Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper … [u]nless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Mont. R. Civ. P. 41(a)(2). Under Rule 41(b) of the Montana Rules of Civil Procedure any dismissal *not made under Rule 41* except for one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits. Mont. R. Civ. P. 41(b) (emphasis added).

9

Title 41, Chapter 3 of the Montana Code Annotated applies to Child Abuse and Neglect proceedings. Pertinent here, under § 41-3-438(3)(d) when a child is found to be a youth in need of care, the court may *enter a judgment* and may order the placement of the child with the noncustodial parent, superseding any existing custodial order, and *dismiss the proceeding* with no further obligation of the department to provide services to the custodial or noncustodial parent. § 41-3-438(3)(a)–(d). (emphasis added).

In viewing these two rules together the Court concludes that when a dismissal is made under § 41-3-438(3)(d) the dismissal was made outside of Rule 41. Therefore, triggering the provisions of Rule 41(b) and making the dismissal a final adjudication on the merits.

Further bolstering this conclusion is the Montana Supreme Court's decision in *In re S.S.*, 276 P.3d 883 (2012). In *In re S.S.*, the Montana Supreme Court considered whether an order under § 41-3-438(3)(d) was a final appealable order. *Id.* at 885. The State initiated abuse and neglect proceedings and removed 12-year-old S.S. and 10-year-old S.S. from their mother's custody. *Id.* at 884. Following improvement in the father's behavior, the father moved to dismiss the State's case and grant him full legal custody of the children. *Id.* The children were placed with the father pursuant to § 41-3-438(3)(d). The mother then appealed from the abuse and neglect proceeding. *Id.*

On appeal, the State argued that the child's placement with the father was not a final judgment and was therefore not ripe for appeal. *Id.* at 885. The Montana Supreme Court disagreed finding that they had previously reviewed orders granting placement of children with one parent where the other parent's parental rights were not terminated. *Id.* (citing *In re B.P.*, 343 Mont. 345 (2008) ("The court's Order giving Father permanent custody of the children is a final order for the purposes of M.R.App. P. 4....")). The court further found that in regard to abuse and neglect proceedings the only orders not appealable under the Montana Rules of Appellate Procedure are orders granting temporary custody. *Id.* (citing M.R.App. P. 6(5)(c)). And, that the dismissal under § 41-3-438(d) had the effect of terminating both the State's and District Court's jurisdiction over the abuse and neglect proceeding that gave rise to the appeal, making it a final appealable order. *Id.* As a general rule the Montana Supreme Court only assumes jurisdiction of an appeal in civil matters when a final judgment has been entered. *See Trombley v. Mann*, 30 P.3d 355, 356 (2001).

In this case H.K. was adjudicated as a Youth in Need of Care following the show-cause hearing on December 4, 2023. (Doc. 1-11 at 6). On February 4, 2024, CFSD placed H.K. with Kolstad's ex-wife and H.K.'s biological mother, Christine Kraemer, in Canada. (Doc. 1 at 23). On February 16, with H.K. now placed with the noncustodial parent and apparently safe, CFSD filed a motion to dismiss the petition and provide no further services to the family. (Doc. 11-1). On February 20,

the District Court entered an order under § 41-3-438(3)(d) placing H.K. with her birthmother, superseding any existing custodial order and ending the department's obligation to provide further services to the birthmother or to work towards reunification with the father. (*Id.* at 11–12).

Here, the case was dismissed under § 41-3-438(3)(d). The Order dismissing the case does not cite to Rule 41, and instead references § 41-3-438(3)(d) as the mechanism by which the case is being dismissed. (*See* Doc. 6-1 at 11). The Court agrees with Defendants that the Order was made under § 41-3-438(3)(d) rather than Rule 41, thereby triggering the provisions of Rule 41(b) and making the dismissal a final adjudication on the merits.

For these reasons the Court finds that the Order was a final adjudication on the merits.

B.   *Stipulated Issues*

In his response to the Defendants' objection, Plaintiff argues that the Order did not constitute a final judgment on the merits because the parties stipulated to the material facts at the December 4, 2023, show-cause hearing. (Doc. 20 at 10). Therefore, Plaintiff argues, none of the issues were actually litigated. (*Id.*). Plaintiff argues that collateral estoppel requires an issue to be "raised, contested, and

submitted for determination" in order to qualify as "actually litigated." (*Id.* (quoting *Janjua v. Neufield*, 933 F.3d 1061, 1066 (9th Cir. 2019).

Here, the substantive issue, whether H.K. was a Youth in Need of Care, was raised, contested, and submitted for determination at the show-cause hearing. The critical issue at the December 4, 2023, hearing was whether H.K. faced an imminent risk of physical harm, making them a Youth in Need of Care. At the hearing, Plaintiff stipulated to a finding that H.K. was exposed to an "unreasonable physical risk" based on Plaintiff's refusal to approve the care recommended by medical professionals. (Doc. 6 at 25). Based on the stipulation, Judge Laird adjudicated H.K. as Youth in Need of Care, finding that the Plaintiff "physically neglected the child" by "exposing or allowing the child to be exposed to an unreasonable physical risk to the child" when they "refused to sign paperwork for the Youth to receive the care that was recommended by medical professionals" despite the fact that "the Youth was suicidal and needed acute psychiatric care." (Doc. 1-11 at 4). Here, Judge Laird determined H.K. was a Youth in Need of Care based on the relevant stipulation. Further, as Judge Cavan noted, Plaintiff had his opportunity to contest the allegation that H.K. faced imminent danger of serious bodily injury at the show-cause hearing but instead elected to enter into a stipulation with CFSD. (Doc. 18 at 14). Therefore, this Court finds that the stipulation made prior to the show-cause hearing does not change the fact that the Order was a final adjudication on the merits.

## IV. Conclusion

For these reasons, the Court finds that the District Court's Order from February 20, 2024, was a final adjudication on the merits. Therefore, all four elements required for the underlying proceedings to have collateral estoppel effect have been met.

IT IS SO ORDERED that Judge Cavan's Findings and Recommendation (Doc. 18) are ADOPTED IN PART and REJECTED IN PART. IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (Doc. 5) for failure to state a claim is GRANTED.

DATED this 26th day of March, 2025.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge